# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SARTIN SERVICES, INC.,                    )
                                          )
    Plaintiff/Counterclaim             )
    Defendant,                         )
                                          )
v.                                        )
                                          )
TRANS/AIR MANUFACTURING                   )
CORP.,                                    )
                                          )
    Defendant/Counter-                 )
    claim Plaintiff,                   )
                                          )
  and                                    )
                                          )
RICHARD LEHNERT[1] and MARK               )          1:07CV823
SLOBODIAN,                                )
                                          )
    Defendants.                        )
                                          )
TRANS/AIR MANUFACTURING                   )
CORP.,                                    )
                                          )
    Third-Party Plaintiff,             )
                                          )
v.                                        )
                                          )
EDWARD L. SARTIN, JR.,                    )
                                          )
    Third-Party Defendant.             )

---

[1] Pursuant to Fed. R. Civ. P. 60(a), the Court corrects the misspelling of Defendant Lehnert's name in the Complaint and docket sheet.

## MEMORANDUM OPINION AND ORDER

**SHARP, Magistrate Judge**

This matter comes before the Court on cross motions for partial and full summary judgment. All Defendants move for summary judgment on both of the causes of action of Plaintiff Sartin Services, Inc. ("Sartin Services") for breach of contract and fraud. (Docket No. 65.) Plaintiff Sartin Services and Third-Party Defendant Edward L. Sartin, Jr. move for partial summary judgment as to Plaintiff's First Cause of Action against Defendant Trans/Air Manufacturing ("Trans/Air") and as to Count V of Defendant Trans/Air's claim against Plaintiff. (Docket No. 68.) Finally, Defendant Trans/Air moves for partial summary judgment as to Plaintiff's First Cause of Action. (Docket No. 73.)

In addition to the above summary judgment motions, there are two pending motions to dismiss in this action. The first motion to dismiss is filed by Richard Lehnert and Mark Slobodian and seeks their dismissal from Plaintiff's First Cause of Action pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 10.) The second motion to dismiss is filed by Lehnert, Slobodian, and Trans/Air and seeks the dismissal of Plaintiff's Second Cause of Action for fraud pursuant to Rule 12(b)(6). (Docket No. 12.)

These motions have been fully briefed, and the Court heard oral argument on the motions on May 24, 2010.[2]  For the reasons stated herein, this Court orders that all claims against the individual Defendants be dismissed but that the action continue as to some of the remaining claims at issue, as more specifically set out below.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Sartin Services is a North Carolina corporation engaged in the business of distributing air conditioning units and parts for commercial vehicles including buses. (Docket No. 1, Complaint at 1-2; Docket No. 59, Am. Counterclaim & Third-Party Complaint at 2.)  Defendant Trans/Air is a Maryland corporation with its principal place of business in Pennsylvania and is engaged in the business of manufacturing air conditioning units and parts for commercial vehicles including buses.  (Docket No. 59 at 2-3.) Defendants Richard Lehnert and Mark Slobodian are officers of Trans/Air.  Sartin Services and Trans/Air began doing business together in late 1987 and continued until August 2007.  (*Id.* at 3; Docket No. 1 at 7.)  Edward L. Sartin, Jr. is a North Carolina resident and the owner and president of Sartin Services.  (Docket No. 59 at 2; Docket No. 60, Pl.'s Reply at 1.)

In its First Cause of Action, Plaintiff Sartin Services alleges that Defendants breached a January 1988 agreement entered into between Sartin Services and Trans/Air in a number

---

[2] The motion for an extension of time to respond to Defendants' motions to dismiss and counterclaim filed by Sartin Services is granted.  (Docket No. 17.)

of ways.  (Docket No. 1 at 7-8.)  Plaintiff's Second Cause of Action alleges that Defendants committed fraud regarding the prices charged for air conditioner units and parts and with respect to sales in Plaintiff's territories.  (*Id*. at 8-9.)

This Court granted Defendant Trans/Air Manufacturing's motion for leave to file an amended counterclaim and third-party complaint.  (Text Order of 10/21/2009.)  In Count I, Defendant Trans/Air alleges that Sartin Services and Edward Sartin breached the parties' May 1995 contract.  (Docket No. 59 at 9.)  Defendant Trans/Air alleges in Count II that Sartin Services and Edward Sartin breached the parties' January 1988 contract by selling competitor parts.  (*Id*. at 9-10.)  In Count III, Defendant Trans/Air alleges that Mr. Sartin and Sartin Services breached the January 1988 agreement by selling and/or servicing competitive air conditioning units.  (*Id*. at 10.)  Defendant Trans/Air alleges in Count IV that Mr. Sartin and Sartin Services violated the parties' November 1998 agreement by selling and/or servicing competitive air conditioning units.  (*Id*. at 11.)  In Count V, Defendant Trans/Air alleges that Mr. Sartin and Sartin Services breached the parties' contracts by advertising itself as a distributor of competitive air conditioning products following the termination of the agreements.  (*Id*. at 11-12.)  Defendant Trans/Air alleges trademark infringement by Sartin Services in Count VI.  (*Id*. at 12-13.)  In Count VII, Defendant Trans/Air alleges that Sartin Services engaged in unfair competition and committed false designation of origin.  (*Id*. at 14-15.)  Defendant Trans/Air alleges in Count VIII that Mr. Sartin and Sartin Services

-4-

committed fraud.  (*Id*. at 15-16.)  Finally, in Count IX, Defendant Trans/Air alleges that Mr. Sartin and Sartin Services violated N.C. Gen. Stat. § 75-1.1 by engaging in unfair and deceptive trade practices.  (*Id*. at 16-17.)

The Court will set out additional facts relevant to specific claims in the Discussion section below.

## DISCUSSION

### A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate only when no genuine issue of material fact exists. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991).  A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party.  (*Id*. at 255.)  The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact."  *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."  (*Id*. at 718-19 (citing *Anderson*, 477 U.S. at 247-48).)  A mere scintilla of evidence supporting the non-moving party's case is

-5-

insufficient to defeat a motion for summary judgment. *See, e.g., Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *see also Anderson*, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

**B.**     **Motion to Dismiss Standard**

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *See, e.g., Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). To survive such a motion, "the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Courts must "construe factual allegations in the non-moving party's favor and will treat them as true, but the court is not bound by the complaint's legal conclusions." *Id.*

**C.**     **Dismissal of Claims Against Individual Defendants Lehnert and Slobodian**

The individual Defendants Richard Lehnert and Mark Slobodian move for dismissal of all claims against them. They filed a Rule 12(b)(6) motion to dismiss with regard to Plaintiff's First Cause of Action for breach of contract. (Docket No. 10.) These two Defendants also filed a motion for summary judgment as to Plaintiff's Second Cause of Action for fraud. (Docket No. 65.)

-6-

With regard to Plaintiff's First Cause of Action for breach of contract, Plaintiff responds by stating that "it does not believe that Defendants Lehnert and Slobodian are subject to a breach of contract action by Plaintiff in the above titled matter." (Docket No. 19 at 1.) Plaintiff further states that it supplied to Defendants' counsel a voluntary dismissal without prejudice for stipulation. (*Id.*) The Court agrees that Plaintiff cannot state a claim for breach of contract against Defendants Lehnert and Slobodian because they are not parties to the contract and are not in privity with Plaintiff. (*See* Docket No. 11.) Accordingly, Plaintiff's First Cause of Action against Defendants Lehnert and Slobodian will be dismissed.

Plaintiff's Second Cause of Action against these individual Defendants is for fraud. (Docket No. 1 at 8-9.) Plaintiff alleges that Trans/Air "through its agents Lenhert [sic] and Slobodian" made "misrepresentations and omissions of fact to Sartin Services regarding OEM pricing commission reports upon which they intended Sartin Services to rely." (*Id.* ¶ 29.) Plaintiff also alleges that the subject matter of the allegedly false statements made by these Defendants includes but is not limited to "statements concerning sales with Plaintiff's territories, or concealment or failure to disclose facts." (*Id.* ¶ 30.)

In their motion for summary judgment, Defendants Lehnert and Slobodian argue that there is no evidence to support Plaintiff's claim that they either defrauded Plaintiff or fraudulently concealed knowledge of Sartin Services' breach of contract claims from Sartin

Services or Edward Sartin.  (Docket No. 66, Defs.' Mem. in Supp. of Mot. for Summ. J. at

15.)  Specifically with regard to Plaintiff's fraud claims on OEM pricing, Defendants argue

that Edward Sartin during his deposition "candidly acknowledged that he was aware of no

untruth communicated by Mr. Lehnert or Mr. Slobodian."  (*Id.* at 17-18 (setting out

deposition transcript excerpts).)

     In response, Plaintiff states that it "addresses solely the fraud claim as it relates to

pricing."  (Docket No. 72, Pl.'s Mem. in Opp'n of Defs.' Mot. for Summ. J. at 11.)

Therefore, summary judgment is appropriate in favor of all Defendants on any fraud claim

other than as to OEM pricing.  *See* Fed. R. Civ. P. 56(e)(2) (setting out opposing party's

obligation to set out specific facts showing genuine issue for trial).  With regard to Plaintiff's

claim of pricing fraud against Defendants Lehnert and Slobodian, Plaintiff does not point to

any evidence showing that either Defendant made a misrepresentation to Plaintiff or

concealed material facts.  (Docket No. 72 at 11-13.)  Plaintiff relies on its Exhibits B-I and

R to support its general claim that "Trans Air repeatedly represented" that Sartin Services

was receiving OEM pricing when in actuality it was not.  (*Id.* at 12.)

     Plaintiff's Exhibits B-I and R fail to show that Defendants Lehnert and Slobodian

made any misrepresentation to or concealed any information from Plaintiff which deceived

Plaintiff. *See Carver v. Roberts*, 337 S.E.2d 126, 128 (N.C. App. 1985) (setting out elements

of fraud).  Exhibits B and C are emails written by Karen Nash and Bob Ensminger

respectively. (Docket No. 72, Exs. B, C.) In Exhibit B, Karen Nash responds to Edward Sartin's inquiry about whether he was receiving "OEM pricing," and not whether he was receiving the lowest possible price. This exhibit, therefore, is not evidence of a misrepresentation as to lowest price. Exhibits D, F, G, and I are Trans/Air documents such as price sheets and customer lists. (*Id.*, Exs. D, F, G, I.) Exhibits E and H are memos from "Mark" (apparently Slobodian) to Trans/Air's customer service and field sales personnel which generally explain pricing for Trans/Air service parts. (*Id.*, Exs. E, H.) Exhibit R is the response letter by Trans/Air counsel to Plaintiff's April 17, 2003 demand letter. Many of these exhibits lack any connection to Defendants Lehnert and Slobodian. Those that show a connection to either Defendant fail to reveal any representation or concealment made by these Defendants upon which Plaintiff could have been deceived into thinking that it was receiving OEM pricing when it was not.

In addition, Plaintiff fails to discuss the deposition testimony of Edward Sartin which, as Defendants point out, shows that they did not make any false statements to him during the relevant time period. (*See* Docket No. 66 at 17-18.) Accordingly, summary judgment will be granted in favor of Defendants Lehnert and Slobodian on Plaintiff's Second Cause of Action for fraud. *See* Fed. R. Civ. P. 56(e)(2).

All claims against the individual Defendants are dismissed by this Order.

**D.**     **Docket No. 12 (Motion to Dismiss Fraud Claim)**

Defendants Lehnert and Slobodian move for dismissal in Docket No. 12 of the fraud claims against them. Because these fraud claims are dismissed on their motion for summary judgment as discussed above, their motion to dismiss is moot.

**E.**     **Defendants' Motion for Summary Judgment**

    **1.**     **Statute of Limitation Defense**

Defendant Trans/Air, the sole Defendant against whom there remain claims, asserts that summary judgment should be granted on all of Plaintiff's claims because the statute of limitations completely bars them. (Docket No. 66 at 9-10.) The parties agree that the applicable limitation period is North Carolina's three-year period for general contract and fraud claims, but that the four-year statute of limitation under the U.C.C. provisions governs a claim for breach of contract for the sale of goods. *See* N.C. Gen. Stat. §§ 1-52(1); 25-2-725(2).

Defendant argues that because Plaintiff filed its Complaint on October 31, 2007, in order to have been timely filed, the claims of Sartin Services must have accrued on or after October 31, 2003, at the earliest. (Docket No. 66 at 9.) Defendant then claims that because the record evidence allegedly shows that Sartin Services was on notice of its claims for a decade and threatened to sue over them in 2003, Sartin Services' filing of its Complaint in 2007 was outside of the limitations period. (*Id*. at 10.) Plaintiff Sartin Services argues that

it discovered that Trans/Air was not providing it with the best possible price no earlier than December 2005 when it received an invoice meant for another Trans/Air customer. (*See* Docket No. 72 at 8.) Thus, Plaintiff further argues its filing of its Complaint in October 2007 was within the limitations period. (*Id*.)

Under the pertinent North Carolina U.C.C. provision, an action for breach of any contract for sale of goods must be commenced within four years after the cause of action has accrued. N.C. Gen. Stat. § 25-2-725. A cause of action accrues when the breach occurs, regardless of the plaintiff's lack of knowledge of the breach. (*Id*.) Generally, whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. *Scott & Jones, Inc. v. Carlton Ins. Agency, Inc.*, ____ N.C. ____, ____, 677 S.E.2d 848, 850 (2009).

Defendant has failed to show that there is no genuine issue of material fact regarding when the alleged breaches occurred.[3] The evidence shows that initially Trans/Air was providing the lowest price available to Sartin Services but that this changed at the latest when Trans/Air changed its pricing structure in July 2005. (Docket No. 72, Ex. M at 121-23, 152.) Beginning in July 2005, Plaintiff Sartin Services was not receiving the lowest possible price.

---

[3] For the purpose of this discussion, the Court assumes without deciding that Defendant is correct in its legal argument that a breach within the limitations period would not revive any cause of action for which the limitations period had run. (Docket No. 66 at 9-10.)

(*Id*.)  If the breach occurred in July 2005, the cause of action of Sartin Services accrued at that time and its Complaint was filed within the limitations period.  Defendant argues that Sartin Services was "on notice of its claims" well before Sartin received the misdirected invoices; however, there is insufficient evidence for summary judgment purposes that a breach occurred triggering the running of the limitations period before those invoices were received.  Defendant's motion for summary judgment as to all of Plaintiff's claims based on the running of the statute of limitation period must therefore be denied.

## 2. <u>Accord and Satisfaction Defense</u>

Defendant Trans/Air also argues that it is entitled to full summary judgment on Plaintiff's claims under the theory of accord and satisfaction.  (Docket No. 66 at 10-11.) According to Defendant, the parties reached an accord and all of Plaintiff's current claims were satisfied when Plaintiff accepted a check from Trans/Air in the amount of $4,622.61 in June 2003.  (*Id*.)  This payment resulted from a demand letter counsel for Plaintiff sent to Trans/Air.  (*Id*.)  Plaintiff responds that the demand letter and response letter make it clear that there was no unequivocal intent on the part of all parties to resolve the matters fully. (Docket No. 72 at 8-9.)

Establishing an accord and satisfaction as a matter of law, as Defendant attempts, "requires evidence that permits no reasonable inference to the contrary and that shows the 'unequivocal' intent of one party to make and the other party to accept a lesser payment in

satisfaction . . . of a larger claim." *Moore v. Frazier*, 63 N.C. App. 476, 478-79, 305 S.E.2d 562, 564 (1983). The letter sent by counsel for Trans/Air to Plaintiff's counsel as a result of Plaintiff's demand letter states that the payment was for commissions which Trans/Air discovered should have been paid to Plaintiff earlier, but because of ministerial errors had not been. (Docket No. 67, Ex. M.) Defendant fails to point to evidence showing that this payment was made to settle the other issues raised in Plaintiff's demand letter. Notably, the letter states that the allegation that Trans/Air "has not sold its products to Sartin at OEM prices is without merit." (*Id.*, Ex. M at 3.) Therefore, Defendant's contention that this payment resolved all claims raised by Plaintiff in the demand letter must be rejected. At most, the payment resolved all of Plaintiff's claims regarding commission payments not paid but earned prior to April or May 2003. Accordingly, Defendant's motion for full summary judgment based on the doctrine of accord and satisfaction must be denied.

### 3. Complaint Paragraphs 26(c) and (d)

Defendant Trans/Air also moves for summary judgment on the claims raised in paragraphs 26(c) and (d) of Plaintiff's Complaint. (Docket No. 66 at 12-15.) As to these two claims, Plaintiff agrees that "Defendants fairly set out the nature of" Plaintiff's "claim" in their brief. (Docket No. 72 at 9.) Defendants state in their brief that paragraph 26(c) refers to the sale of a single air conditioning unit to Myers Equipment Corporation, a bus dealer in Canfield, Ohio. (Docket No. 66 at 12.) Myers bought the air conditioning unit from

-13-

Trans/Air, and Myers had the unit installed in a bus by Trans Arctic, a company located in North Carolina. (*Id.*)

Although Plaintiff acknowledges that Defendant Trans/Air is moving for summary judgment as to the Myers claim, it does not point to any evidence supporting its claim except for the language of the 1988 contract. (Docket No. 72 at 9-11.) Accordingly, summary judgment against Plaintiff and in favor of Trans/Air is granted as to the Myers claim. *Temkin,* 945 F.2d at 718-19.

Paragraph 26(d) is a claim that Defendant breached the 1988 contract by selling air conditioning units to International Trucks, a bus manufacturer located in Tulsa, Oklahoma, which were installed in a number of buses in Oklahoma and sold by International to a North Carolina bus dealer. (Docket No. 1 at 8; Docket No. 66 at 12.) Plaintiff points to its exhibit S which is a collection of Trans/Air bills of lading purporting to show that Trans/Air shipped air conditioning units and parts to International Corporation in Oklahoma. (Docket No. 72, Ex. S.) These copies include the notations "North Carolina Unit" on them and show a shipping date of 2/16/04. (*Id.*)

Plaintiff contends that by this sale Defendant Trans/Air breached the 1988 contract which sets out Plaintiff's exclusive dealership and territory in North Carolina. Plaintiff relies upon paragraphs 1.1, 1.2, and 2.1. Paragraph 1.1 makes Plaintiff the sole and exclusive dealer of Trans/Air products in the State of North Carolina. (Docket No. 69, Ex. A.)

-14-

Paragraph 1.2 provides that Plaintiff's market is all aftermarket sales for both new and used vehicles, including all sales to Thomas Built Buses within North Carolina, and other bus dealers in North Carolina, but excluding "other manufacturers located in" North Carolina. (*Id*.) Paragraph 2.1 provides that Plaintiff will be paid commissions on all sales to Thomas Built Buses.

Plaintiff makes no showing that Thomas Built Buses was involved in the International transaction. Therefore, paragraph 2.1 was not breached by Defendants. Paragraph 1.2 specifically excludes from Plaintiff's market all sales to other manufacturers located in North Carolina. International was a manufacturer but not located in North Carolina. Because even if International was located in North Carolina it would not fall under Plaintiff's territory, no reasonable jury could conclude that Trans/Air's sale to International in Oklahoma violated the terms of the 1988 contract. Accordingly, summary judgment will be granted to Defendant Trans/Air on claims raised in paragraphs 26(c) and (d) of Plaintiff's Complaint.

### 4. <u>Fraud Claims against Defendant Trans/Air</u>

The fraud claims against the individual Defendants were dismissed above. In addition, summary judgment was found to be appropriate in favor of all Defendants on all fraud claims except those as to OEM pricing. Defendant Trans/Air also moves for summary judgment on the pricing fraud claim. (Docket No. 66 at 17-18.)

-15-

Plaintiff alleges in its fraud claims that Trans/Air committed fraud only through its agents Lehnert and Slobodian. (Docket No. 1 ¶ 29 ("Trans/Air, through its agents Lenhert [sic] and Slobodian"), ¶ 30 ("false statements made by Lenhert [sic] and Slobodian"), ¶ 31 ("false statements made by Lenhert [sic] and Slobodian"), ¶ 32 ("false statements of Lenhert [sic] and Slobodian"), ¶ 33 ("false statements by Lenhert [sic] and Slobodian on behalf of Trans/Air").) Because summary judgment is appropriate for these two individual Defendants on Plaintiff's fraud claims as discussed above, the dependent claims of fraud against Defendant Trans/Air are also subject to dismissal for the same reasons.

Moreover, as discussed above, Plaintiff's cited evidence of fraudulent statements made by Trans/Air agents other than Defendants Lehnert and Slobodian, such as the email from Karen Nash, fail to show that material false statements or omissions were made to Plaintiff. (Docket No. 72, Exs. B-I, R.) Therefore, summary judgment is granted to Defendant Trans/Air on Plaintiff's pricing fraud claim.

## 5. **Complaint Paragraph 26(e)**

The parties fail to discuss this claim that Defendant unlawfully terminated the exclusive distributorship agreement. (Docket No. 1 at 8.) Accordingly, this claim remains for trial.

-16-

**F.     Plaintiff's Motion for Partial Summary Judgment**

    **1.     Plaintiff's First Cause of Action**

Plaintiff Sartin Services moves for summary judgment against Defendant Trans/Air on Plaintiff's First Cause of Action for breach of contract.  (Docket No. 68; Docket No. 69 at 7-9.)  Plaintiff argues that under the parties' January 1988 agreement Defendant was to provide Plaintiff with OEM pricing which meant the best possible pricing on Defendant's products.  (Docket No. 69 at 9.)  Plaintiff further argues that because some OEM's (original equipment manufacturers) received a lower price than Plaintiff, Defendant breached the contract as a matter of law.  (*Id*. at 8-9.)  Defendant contends that it gave Plaintiff "OEM pricing" at all times and did not breach this provision of the parties' agreement.

The Court looks first to the language of the contract to determine its terms.  *See Jones v. Casstevens*, 222 N.C. 411, 413, 23 S.E.2d 303, 305 (1942).  "If there be no dispute as to the terms, and they are plain and unambiguous, there is no room for construction," and the contract is interpreted as written.  *Id*.  If, however, the words used "are capable of more than one meaning, the meaning to be given is that which it is apparent the parties intended them to have."  *Id*.  When a contract is ambiguous and the intention of the parties is unclear, interpretation of the contract is for the jury and extrinsic evidence may be considered.  *Holshouser v. Shaner Hotel Group Props. One Ltd. P'ship*, 134 N.C. App. 391, 396-97, 518 S.E.2d 17, 23 (1999).

-17-

The January 4, 1988 contract provides that Trans/Air will sell its products to Plaintiff "both now and in the future, at the OEM/price and under the standard credit terms offered" by Trans/Air. (Docket No. 67, Ex. C ¶ 1.3.) The contract does not define "OEM/price." In 1988, Defendant Trans/Air offered 30% to 40% off of list price to OEM's. (Docket No. 66, Ex. B at 18 (deposition of Mark Slobodian); Docket No. 67, Ex. F (Feb. 29, 1988 memo of Bill King).) Defendant Trans/Air at that time offered the best possible price (40% off list price) to Plaintiff. (Docket No. 67, Ex. F.) In July 2005, Defendant Trans/Air changed its method of pricing from a percentage off of list price to a percentage of gross margin. (Docket No. 72, Ex. M at 121-23, 152.) Defendant placed Plaintiff in the twenty-three percent gross margin range along with fifty percent of its other OEM customers. (*Id.* at 123.) Thirty-six percent of OEM's were priced in a lower price range while fourteen percent were in a higher price range. (*Id.*)

The critical question is whether, when the parties agreed in 1988 that Plaintiff would receive "the OEM/price" from Defendant, they meant the lowest possible price or, rather, one of the same price levels that Defendant was offering to an OEM. The Court finds the language used in the agreement to be ambiguous. "The OEM/price" may indicate a definite price rather than a range. However, both in 1988 and later after the pricing method change by Defendant, OEM's were offered a range of prices. It is not clear from the contract whether the parties intended to fix a set price for Plaintiff. There is evidence on both sides

-18-

of this issue. It is not disputed that beginning in 1988 and for some time Plaintiff received the lowest possible price. This evidence of course-of-performance between the parties supports the deposition testimony of Edward Sartin that the contract language meant lowest possible price. However, Defendant shows that it rejected attempts by Edward Sartin to include in the 1988 contract language such as "at the lowest maximum distributor discount price" and "lowest discount price." (*See* Docket No. 67, Ex. E.) Moreover, Edward Sartin proposed in a May 29, 1998 draft that sales to Sartin Services Canada be "at the lowest OEM pricing." (*Id.*, Ex. J.) The final agreement made in November 1998 included the language "at Trans Air's lowest current master distributor pricing." (*Id.*, Ex. K.) Therefore, there is some evidence that at least in 1998 Edward Sartin knew that Defendant had more than one OEM price and that Edward Sartin knew that Defendant Trans/Air had rejected language binding it to offering Plaintiff the lowest of its prices.

Because the meaning of "the OEM/price" is a question for the jury, both Plaintiff's motion for summary judgment on this issue and Defendant's motion (Docket No. 73) must be denied.

### 2. Count Five of Defendant Trans/Air's Counterclaim

Edward Sartin and Sartin Services also move for summary judgment on Count Five of Defendant Trans/Air's Counterclaim. (Docket No. 69 at 9-13.) In Count Five, Defendant alleges that Edward Sartin and Sartin Services breached the January 1988 Agreement, the

May 1995 Agreement, and the November 1998 Agreement[4] by working with competitive air conditioning systems during the two years following the termination of the parties' relationship. (Docket No. 59 at 11-12.) Edward Sartin and Sartin Services contend that summary judgment should be granted in their favor because the non-compete clauses are overly broad and unreasonable. (Docket No. 69 at 9-13.)

The original January 1988 contract does not contain a non-compete provision effective after termination of the contract. In September 1988, the parties agreed to amend the earlier agreement and an included amendment was that "Sartin Services will not work with competitive air conditioning companies for one year in the event that this contract is terminated." (Docket No. 72, Ex. K ¶ 8.) This contract is governed by North Carolina law.

Sartin Services does not show that a North Carolina court has found such a short limitation period to be unreasonable, even considering its apparent wide geographic reach. (Docket No. 69 at 10.) The Court notes that this limitation was included in the letter sent by Edward Sartin to Trans/Air, and there is no evidence that Trans/Air insisted on this limitation. (Docket No. 72, Ex. K.) In addition, Trans/Air markets its products worldwide to all levels in the chain of commerce. (Docket No. 59 ¶ 8.) Documents from Trans/Air show that it has customers in many different states. (Docket No. 72, Exs. F, G.) Its

_____

[4] In their briefing, Defendants argue that the covenants not to compete in only the 1988 and 1998 Agreements were violated. (Docket No. 74 at 8.)

international operations in Canada are shown by the 1998 contract with Sartin Services. A wide geographic reach for a non-compete clause is therefore necessary to protect Trans/Air's customers. The one-year limitation is not, therefore, invalid as a matter of law.

The 1998 agreement is controlled by Maryland law. (Docket No. 72, Ex. L ¶ 13.) It provides in paragraph 8 that for 24 consecutive months after Sartin Services is no longer a distributor for Trans/Air, neither Sartin Services nor Edward Sartin shall sell products, solicit or accept orders for products, or install or solicit to install products (defined as air conditioning systems and components which are competitive with or similar to those which Trans/Air manufactures, sells, or distributes) to anyone whom Sartin Services sold products manufactured by Trans/Air at any time during the two years preceding Sartin Services' ceasing to be a distributor for Trans/Air. (Docket No. 72, Ex. L.) Sartin and Sartin Services are also prohibited from soliciting current Trans/Air employees to cease working for Trans/Air. (*Id.*)

In arguing that the 1998 covenant is overly broad and unreasonable, Sartin and Sartin Services err when they define the customers with whom they are forbidden from dealing. The off-limits customers after the termination of the parties' relationship are those to whom Sartin Services sold Trans/Air products during the last two years of the parties' business relationship. (Docket No. 72, Ex. L ¶ 8.) Sartin Services incorrectly contends that customers include "any customer of Trans Air in the two years proceeding, [sic] the termination of the

-21-

agreement." (Docket No. 69 at 11.)  The agreement's language therefore bars Sartin Services from doing business with a much smaller class of customers than Sartin argues.

The use of such a client-based restriction tied to customers to whom Sartin Services sold Trans/Air products, instead of a geographical restriction, is reasonable under North Carolina law.  *See Farr Assocs., Inc. v. Baskin*, 138 N.C. App. 276, 283, 530 S.E.2d 878, 883 (2000) (client-based restriction cannot extend beyond contacts made during period of employee's employment).  Also, in North Carolina, a "five-year time restriction is the outer boundary which our courts have considered reasonable."  *Id*. at 280, 530 S.E.2d at 881. Therefore, even if the "look-back" two-year period is added to the two-year post-termination limitation period, such a four-year limitation period is reasonable.

Plaintiff Sartin Services and Edward Sartin do not contend that under Maryland law the covenants are invalid.  *See* Docket No. 69 at 9-13.

The motion for partial summary judgment of Edward Sartin and Sartin Services on Count Five of Defendant Trans/Air's counterclaim is therefore denied.

## G.    Defendant Trans/Air's Motion for Partial Summary Judgment

Defendant Trans/Air filed an out-of-time motion for partial summary judgment on Sartin Service's First Cause of Action for breach of contract.  (Docket No. 73.)  Defendant argues in this motion that Sartin Services acknowledged in its own motion for summary judgment "the unambiguous nature of the price term of its contract with Trans Air."  (*Id*. at

1.) Sartin's motion for summary judgment to which Defendant refers was filed on the last day of the deadline for filing dispositive motions, February 27, 2010. (Docket No. 68.) Defendant's motion based on that motion could not have been filed prior to the court's filing deadline. However, Defendant did not receive an extension of time to file its motion and does not address the tardiness of its filing in its motion. (Docket No. 73.) Most importantly, this Court concluded above that a jury question exists on the issue of whether Trans/Air breached the parties' agreement by selling products at a price higher than the "OEM/price" as set out in the contract. Accordingly, Defendant Trans/Air's motion must be denied.

### Conclusion

For the foregoing reasons, **IT IS ORDERED** that:

(1)    the Motion to Dismiss filed by Defendants Lehnert and Slobodian (Docket No. 10) is **GRANTED**;

(2)    the Motion for Summary Judgment filed by Defendants Lehnert and Slobodian (Docket No. 65) is **GRANTED** as to them; all claims against the individual Defendants are thus dismissed;

(3)    Docket No. 12 is **DISMISSED** as moot;

(4)    the Motion for Summary Judgment filed by Defendant Trans/Air (Docket No. 65) is **GRANTED** as to Defendant Trans/Air on all fraud claims, and **GRANTED** as to it

on the breach of contract claims regarding Myers Equipment Corporation and International

Trucks, and is otherwise **DENIED;**

      (5)      Docket No. 68 is **DENIED**;

      (6)      Docket No. 73 is **DENIED**; and

      (7)      Docket No. 17 is **GRANTED.**


                                   /s/ P. Trevor Sharp
                             United States Magistrate Judge


Date:  July 2, 2010